UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

David Evens d/b/a C&D Trucking,

    Plaintiff,

vs                                           Case No: 04-71198
                                               Honorable Victoria A. Roberts

S&K Equipment Co.,

    Defendant.
_____/

## ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO LIMIT DAMAGES

**I.  INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment and to Limit Damages.  The Court **GRANTS** Defendant's Motion for Summary Judgment and deems Defendant's Motion to Limit Damages **MOOT**.

**II.  BACKGROUND**

Plaintiff David Evans d/b/a C&D Trucking brings this action against his former employer, Defendant S&K Equipment Company.  Plaintiff alleges that he was wrongfully terminated.  Defendant says Plaintiff was fired for violation of company rules and moves for summary judgment on all claims.

Plaintiff is an owner-operator in the trucking industry.  As such, he leased his truck to Defendant, which in turn leased it and Plaintiff's services as a driver to its affiliate, B&W.  Plaintiff drove for Defendant for over 21 years before his lease agreement was terminated on September 16, 2003.  Throughout his tenure, Defendant

indicates that Plaintiff had multiple conflicts and incidents resulting in disciplinary action against Plaintiff.  The incident that Defendant says ultimately led to Plaintiff's termination occurred on September 2, 2003.

Defendant modified Plaintiff's delivery/pickup schedule due to the Labor Day holiday; Plaintiff's normal date to pickup a load in Hopkinsville, Kentucky was pushed back one day from Tuesday, September 2 to Wednesday, September 3.  Therefore, Defendant says that Plaintiff was expected to leave Tuesday evening with a load for which he would have been paid.  However, Plaintiff was upset with the schedule change and protested by contacting his union representative.  The union representative contacted the dispatcher, but the schedule ultimately remained the same and Plaintiff was expected to leave with a load Tuesday evening.  Defendant says Plaintiff disregarded this directive and headed for Hopkinsville, without a load and with a company trailer, on Tuesday morning.  Consequently, he was not paid for his travel to Hopkinsville and the load that he was to pick up was not ready when he arrived.  Plaintiff was offered the option of laying over in Hopkinsville until Wednesday so that he could bring a load back.  Plaintiff declined and headed back to Michigan.  Therefore, he was not paid for the return trip either.  Defendant issued Plaintiff a written warning for failing to follow dispatch instructions.

During the return trip, Plaintiff was involved in a traffic accident that only resulted in minor damage to the vehicle of the other driver.  Defendant says that it was first notified by that driver, because Plaintiff did not report it until 24 hours afterwards.  Plaintiff denies such a delay.  He says that he called B&W dispatch while at the scene of the accident.  However, he says no one answered and he left a message.  Per

2

Plaintiff, his telephone call was not returned until the following day, more than 24 hours later. As proof, Plaintiff attaches his cell phone bill showing outgoing and incoming calls which correspond to his claims. On September 3, Plaintiff was placed on suspension pending a full investigation. On September 16, 2003, Plaintiff's lease agreement was canceled. The stated reason for Plaintiff's discharge was his failure to report the accident in a timely fashion.

Plaintiff grieved his suspension. In accordance with the collective bargaining agreement ("CBA"), there was a local level hearing during which Plaintiff's suspension and discharge were discussed. Because no resolution was reached at the local level, the matter was referred to the Michigan Joint State Cartage and Over-The-Road Arbitration Committee ("Arbitration Committee" or "the Committee"). The Arbitration Committee upheld the suspension without reaching the merits because by the time the Committee convened, Plaintiff had already been fired and the Committee concurred with Defendant that it was no longer necessary to hear the grievance. Plaintiff's subsequent request for rehearing was denied.

Plaintiff says that he did not file a grievance regarding the discharge because he was not advised by his union representative that he was required to do so. And, he was under the impression that a separate filing was not necessary since the suspension grievance was pending and discharges are covered under the same provision of the CBA.

Plaintiff admits that he did not present a copy of his cell phone bill at the local level hearing. He says that it was not available then. But, he presented it at the rehearing before the Arbitration Committee. The Committee declined to reconsider its

decision based on the telephone records, however, because Plaintiff failed to establish that the records were not available during the initial hearing.  *See* Pl. Exh. M.  Plaintiff says that at the rehearing he also attempted to show the bill to S&K President Richard Klein; Klein refused to look at it.

Plaintiff believes that the reason given for his termination is a pretext.  He believes that he was really fired for grievances he previously filed and because of his union activities.  Plaintiff believes that Defendant was systemically attempting to get rid of union drivers and says that his union activities included membership in the union and supporting reform candidates for leadership of the union local.  Plaintiff also asserts that his discharge violated the National Master Freight Agreement ("NMFA"), which prohibited Defendant from suspending or discharging him without just cause.  The NMFA further requires an employer to allow an employee to remain on the job until a discharge or suspension is sustained under the grievance procedure, except for cases involving "cardinal" offenses.  Plaintiff asserts that NMFA does not define a "cardinal" offense, but he presumes that it does not include minor traffic accidents such as his.  Yet, he was not allowed to continue working during the grievance procedure.  Defendant disputes Plaintiff's interpretation of the NMFA regarding cardinal offenses.  Defendant reads the agreement as including an employee's failure to report an accident as a cardinal offense.

In his complaint, Plaintiff alleges breach of contract (Count I), wrongful discharge in violation of public policy (Count II), retaliatory discharge (Count III), and age discrimination (Count IV).  Plaintiff advised in his Response that he is withdrawing the age discrimination claim.  Defendant moves for summary judgment on the remaining

4

claims. Should any of the claims survive, Defendant requests that Plaintiff's claims for punitive and exemplary damages be dismissed, and that the remaining damages be limited.

### III. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*,

48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

**IV.     APPLICABLE LAW AND ANALYSIS**

**A.     BREACH OF COLLECTIVE BARGAINING CONTRACT**

Plaintiff alleges that Defendant breached the CBA in several respects, including his suspension and termination. He brings his claim under §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185. Defendant denies the factual basis of Plaintiff's claim, but requests summary judgment because Plaintiff failed to allege or prove that his union breached its duty of fair representation. Defendant contends that Plaintiff's claim is a so-called "hybrid" §301 LMRA breach of contract claim, which requires that Plaintiff prove both a breach of contract by Defendant and breach of the duty of fair representation by the union. *See Bagsby v Lewis Brothers, Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987). Plaintiff argues that his is not a hybrid claim because he exhausted all of his administrative remedies relative to both the

6

suspension and termination and, therefore, he is not required to prove breach of the duty of fair representation as part of his claim against Defendant. In any event, Plaintiff contends that he has presented sufficient evidence of a breach by the union.

Defendant is correct, but for slightly different reasons than it argued. Under §301(a) of the LMRA, an employee may bring an action against his employer for breach of a CBA. *Alford v General Motors Corp.,* 926 F.2d 528, 530 (6th Cir. 1991). The employee must first, however, exhaust any grievance procedure contained in the agreement. *Id*. And, "if a collective bargaining agreement contains exclusive and final procedures for the resolution of employee grievances, an employee will be prohibited from bringing an action under §301 absent an allegation that his union breached its duty of fair representation." *Id* at 531. *See also DelCostello v International Brotherhood of Teamsters*, 462 U.S. 151, 163 (1983)("Ordinarily . . . an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. . . . Subject to very limited judicial review he will be bound by the result according to the finality provisions of the agreement."). Therefore, the burden for employees who exhaust administrative remedies but are bound by the final decision is the same as the burden for employees bringing hybrid §301 claims--they must prove a breach of contract by the employer and breach of the duty of fair representation by the union.[1] If that burden is met, "the employee must then show that the union's actions or

---

[1]Plaintiff asserts and Defendant concedes that the union is not a necessary party in a §301 action, particularly (as Plaintiff points out) since he no longer seeks reinstatement. *See Gersbacher v Commercial Carriers, Inc.,* 91 F.R.D. 533 (E.D. Mich. 1981). It is settled that an employee does not have to sue his employer and the union in the same action. *See Vaca v Sipes*, 386 U.S. 171, 187 (1967). However, "the case he must prove is the same whether he sues one, the other, or both." *DelCostello,* 462

7

omissions 'tainted the grievance procedure such that the outcome was more than likely affected by the Union's breach.'" *Garrison v Cassens Transport Co.,* 334 F.3d 528, 540 (6th Cir. 2003)(*quoting Dushaw v Roadway Express, Inc.,* 66 F.3d 129, 132 (6th Cir. 1995)). The employee has the heavy burden of proving that the grievance process was seriously flawed by the union's breach. *Id*.

The parties agree that Plaintiff exhausted his administrative remedies.[2] And, Plaintiff admits that the decision rendered by the Arbitration Committee was a final and binding decision.[3] *See* Pl. br. at p. 9. Consequently, Plaintiff cannot sustain an action against Defendant unless he can show that the union breached its duty of fair representation. *Alford*, 926 F.2d at 530. As Defendant asserts, there is no genuine issue of material fact that Plaintiff failed to make this showing.

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or

---

U.S. at 165.

[2] The Court notes, however, that the parties base their assertion on this point on a factual assumption that is not clearly supported by the record; namely, that Plaintiff fully exhausted his administrative remedies as to *both* his suspension and discharge. There is sufficient evidence that Plaintiff exhausted his suspension remedies. However, he admits that he never formally filed a grievance for his termination. But, he asserts that Defendant agreed to address both his suspension and discharge in the suspension hearings, and that both in fact were addressed. Pl. br. at p. 8. Defendant does not dispute Plaintiff's claim. Def. Reply br. at pp. 3-4. Because the result is ultimately the same even if the administrative remedies for the termination were not fully exhausted (because in this case Plaintiff must prove a breach of duty by the union in either case), the Court proceeds on the assumption that they were.

[3] The Rules of Procedure for the Arbitration Committee states: "[M]ajority decision of the Committee shall be final and binding upon all parties to the grievance and is not subject to appeal." Pl. Exh. J, Section IV(H).

8

in bad faith." *Vaca*, 386 U.S. at 190. A union's actions are not considered arbitrary unless they are "'so far outside a wide range of reasonableness as to be irrational.'" *Driver v United States Postal Service, Inc.,* 328 F.3d 863, 869 (6th Cir. 2003). To show discrimination, an employee must present evidence that the union treated his grievance differently than others. *Id*.

Plaintiff has not presented *prima facie* evidence that satisfies his burden. He first alleges that, very shortly after he was fired, Defendant fired a union representative whom Plaintiff believes would have better represented him. But, whatever Defendant's motivation may have been then is irrelevant and does not bear on whether the union fulfilled its obligation to Plaintiff in its representation of him on this matter.

Plaintiff's second assertion is that the union local president mishandled scheduling for a grievance that Plaintiff filed almost one year before the incident at issue. The union's handling of an unrelated grievance is also irrelevant.

Lastly, Plaintiff says that his union representative did not advise him that he needed to file a separate grievance on his termination. Plaintiff has not presented any cognizable evidence that the union's alleged failure to advise him was arbitrary, an act of bad faith or discriminatory. The deposition testimony to which he cites only recounts facts that are either irrelevant or do not suggest a breach of duty. *See* Pl. Exh. O at pp. 57-63, 93-96, 158-159. At best, one could argue that the union's alleged failure was negligent. However, evidence of mere negligence, ordinary mistakes, errors or flaws in judgment is insufficient to carry an employee's burden. *Garrison*, 334 F.3d at 539. Consequently, Plaintiff has failed to meet his burden on summary judgment, and Defendant's motion on Plaintiff's breach of contract claim is granted.

**B. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY AND RETALIATORY DISCHARGE**

In Counts II and III, Plaintiff claims that his discharge violated Michigan public policy and was retaliatory for three reasons: 1) he belonged to a union; 2) he supported reform candidates for leadership of the union local; and 3) he filed multiple grievances against Defendant. Defendant argues that the state law claims are preempted by both the National Labor Relations Act ("NLRA"), 29 U.S.C. §151, *et seq.*, and §301 of the LMRA. Defendant is correct.

State law claims that are based on activities prohibited or protected by the NLRA are preempted. *Calabrese v Tendercare of Michigan, Inc.*, 262 Mich. App. 256, 260 (2004)(*citing San Diego Building Trades Council v Garmon*, 359 U.S. 236, 245 (1959)). The NLRA expressly prohibits an employer from firing employees for joining or assisting a labor organization:

> It shall be an unfair labor practice for an employer--
>
> (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
>
> * * *
>
> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization

29 U.S.C. §158(a). Section 157 states:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may

> be affected by an agreement requiring membership in a labor
> organization as a condition of employment as authorized in section
> 158(a)(3) of this title.

Plaintiff concedes, as he must, that his union membership and support for reform candidates are protected activity under the NLRA. *See* Pl. br. at p. 14. Consequently, these claims are preempted and may not serve as the basis for his state law claims.

While Plaintiff is correct that his claim that he was fired because he filed grievances, is outside the scope of the NLRA, this claim, too is preempted --- but by the LMRA.

Section 301 of the LMRA states in relevant part:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting
> commerce as defined in this chapter, or between any such labor
> organizations, may be brought in any district court of the United
> States having jurisdiction of the parties, without respect to the
> amount in controversy or without regard to the citizenship of the
> parties.

29 U.S.C. §185(a). This language has been interpreted to preempt state law claims that are inextricably intertwined with consideration of the terms of a labor contract. *Mattis v Massman*, 355 F.3d 902, 905 (6th Cir. 2004). Plaintiff asserts that his is an "independent claim" which may be resolved without construing a labor contract and it is thus, not preempted. *Id* at 905-906. Plaintiff is wrong. There is a two-step test for determining whether a claim is independent:

> First, courts must determine whether resolving the state-law claim
> would require interpretation of the terms of the collective bargaining
> agreement. If so, the claim is preempted. Second, courts must
> ascertain whether the rights claimed by the plaintiff were created by

11

> the collective bargaining agreement, or instead by state law. If the rights were created by the collective bargaining agreement, the claim is preempted.

*Id* at 906 (internal citation omitted). If a claim falls into either category, it is preempted. *Id*.

Plaintiff argues that his claims are independent because it is only necessary to decide whether Plaintiff reported the accident in a timely fashion and whether Defendant used the accident as a pretext for firing him. But, to examine the pretext claim, the Court necessarily would need to consider what Plaintiff says was the real reason Defendant fired him: because he filed grievances. The right to file grievances is extended under the CBA. Thus, the Court would have to look into the terms of the CBA in deciding this issue; it is not independent. *Mattis, supra.*

Because Plaintiff's state law claims are preempted, Defendant's motion is granted on Counts II and III.[4] .

**V.   CONCLUSION**

The Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety. Hence, Defendant's Motion to Limit Damages is **MOOT**.

**IT IS SO ORDERED**.

---

[4] It is not necessary for the Court to consider Defendant's alternate grounds for summary judgment on these claims; namely, that violation of public policy claims may only be brought by at-will employees, and that there is no evidence that Defendant was aware that Plaintiff was engaged in protected activity.

/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: December 15, 2005

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 15, 2005.

s/Linda Vertriest
Deputy Clerk